NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| COUNTY OF MIDDLESEX, NEW JERSEY,<br><br>Plaintiff,<br><br>v.<br><br>UNDERWRITERS AT LLOYDS, LONDON,<br><br>Defendant. | Civil Action No. 25-1391 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Underwriters at Lloyds, London's ("Lloyds") Motion to Dismiss, Compel Arbitration, and Stay Proceedings (ECF No. 3) ("Motion") arising from Plaintiff County of Middlesex, New Jersey's ("Middlesex") Complaint (ECF No. 1-2). Middlesex opposed (ECF No. 9), and Lloyds replied (ECF No. 10). After careful consideration of the parties' submissions, the Court decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons set forth herein, the Motion is granted in part and denied in part.

I. **BACKGROUND**

   A. **Factual Background**

Lloyds, a group of insurance underwriters authorized to write excess insurance policies in New Jersey, issued an insurance policy of excess insurance (the "Policy") to Middlesex, effective

October 1, 2017 through October 1, 2018. (Compl. ¶¶ 1, 7, 18, ECF No. 1-2.)[1] Within the Policy, Middlesex received coverage for personal injury or bodily injury resulting from "Law Enforcement Activities." (*Id.* ¶ 19.)

Thereafter, Middlesex timely made a claim to Lloyds pertaining to the settlement and defense of *Jennifer Riley v. Middlesex County, New Jersey*, in the Superior Court of New Jersey (the "Underlying Action"). (*Id.* ¶¶ 1, 2; Pl.'s Opp'n Br. 2, ECF No. 9.) During the Underlying Action, "[Middlesex] sent [Lloyds] reports concerning the status of the case and kept [Lloyds] apprised of all material developments, including but not limited to the retention of defense counsel to represent the various [defendants in the Underlying Action], discovery, motion practice, mediation and settlement." (Compl. ¶ 3.)

Middlesex eventually settled the Underlying Action for $750,000, "which [Lloyds] acknowledged and agreed was a reasonable settlement under the circumstances given the exposure to liability and the costs associated with the continued defense of the case[]" and advanced defense costs to counsel retained to represent the defendants in the Underlying Action. (*Id.*; Pl.'s Opp'n Br. 2.) Middlesex then provided Lloyds with proof of payment for the settlement amount and defense costs because "[t]he claims asserted in the Underlying Action [were] covered under the Law Enforcement Activities coverage section of the Policy." (Compl. ¶¶ 4, 21.)

After Middlesex provided proof of payment, Lloyds sent Middlesex a letter denying reimbursement for the damages and defense costs incurred, requesting additional information to facilitate further analysis before reimbursement, and providing Middlesex the Policy language.

---

[1] In considering the instant motion, this Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

2

(Correspondence, ECF No. 1-2 at Compl. Ex. C; Def.'s Moving Br. 2, ECF No. 3-2; Pl.'s Opp'n Br. 2-3.)

Within the provided Policy language, Lloyds outlined the arbitration clause in the "General Policy Conditions" section:

> ARBITRATION: In the event the ASSURED[2] and the Underwriters are unable to agree as to the amount necessary to rebuild, repair or replace the damaged or destroyed property or the actual amount of indemnity to be paid, each party shall name a competent and disinterested arbitrator, and the two so chosen shall, before proceeding further, appoint a competent and disinterested umpire. The arbitrators together shall calculate the indemnity due, and failing to agree, shall submit their differences to the umpire.
>
> The award in writing, duly verified by any two, shall determine the points in question. Both parties shall pay the cost of their attorneys and equally pro rate the cost of the umpire. The ASSURED'S portion of such fee does not accrue to the Loss Fund.
>
> The decision by the arbitrators shall be binding on the Underwriters and the ASSURED, and that judgment may be entered in any court of competent jurisdiction.

(Correspondence; Policy 11, ECF No. 3-3 (emphasis in original).) To date, Lloyds has not reimbursed Middlesex for any amounts incurred to settle and defend the Underlying Action, as Lloyds believes the dispute should go to arbitration. (Pl.'s Opp'n Br. 3; *see generally* Def.'s Moving Br.)

B.  **Procedural Background**

Middlesex first initiated this action in the Superior Court of New Jersey on the bases of declaratory judgment, breach of contract, breach of the covenant of good faith and fair dealing, insurer bad faith, and unjust enrichment for Lloyds' failure to reimburse Middlesex for the

---

[2] Middlesex is listed as the named assured on the Declaration Page. (Declaration Page, ECF No. 3-3.)

Underlying Action's settlement and defense costs. (*See generally* Compl.) Thereafter, Lloyds removed the action to this Court pursuant to 28 U.S.C. § 1332. (Notice of Removal 2, ECF No. 1.)

After removing the action, Lloyds filed this Motion requesting that the Court dismiss the Complaint pursuant to Federal Rule of Civil Procedure[3] 12(b)(6) and compel Middlesex to proceed to arbitration. (*See generally* Def.'s Moving Br.) Lloyds requests in the alternative that this Court compel Middlesex to proceed to arbitration and stay this matter pending the results of the arbitration. (*Id.*) Middlesex opposed (Pl.'s Opp'n Br.), and Lloyds replied (Def.'s Reply Br., ECF No. 10).

## II.    LEGAL STANDARD

"It is well established that the Federal Arbitration Act (FAA), reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "The strong federal policy favoring arbitration, however, does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id.* (citations omitted). When deciding a motion to compel arbitration, a court must first determine the applicable standard of review. The Third Circuit has instructed that:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to

---

[3] All references to "Rule" or "Rules" hereafter are in reference to Federal Rules of Civil Procedure.

> arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks and citation omitted) (alteration in original).

"Section 3 of the FAA specifies that, when a dispute is subject to arbitration, the court 'shall on application of one of the parties stay the trial of the action until [the] arbitration' has concluded." *Smith v. Spizzirri*, 601 U.S. 472, 473–74 (2024) (quoting 9 U.S.C. § 3) (alteration in original). Even in instances where the parties move to dismiss, or in the alternative to stay, the case must be stayed. *Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 245 (3d Cir. 2025) (citing *Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 453 (6th Cir. 2021); *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 711 (9th Cir. 2024)).

## III. DISCUSSION

In the Motion, Lloyds argues that Middlesex's Complaint should be dismissed and arbitration should be compelled, or alternatively, this Court should compel arbitration and stay this action pending arbitration. As discussed below, this Court shall compel arbitration and stay this action.

A.  **This Court Shall Compel Arbitration**

Arbitration must be compelled because the Complaint and its supporting documents demonstrate that there is a valid agreement to arbitrate, and the dispute falls within the agreement's scope.[4]

*1.    There Is a Valid Agreement to Arbitrate*

The Court begins by analyzing whether there is an enforceable agreement to arbitrate. In evaluating whether the claims in question are subject to an enforceable arbitration agreement, ordinary principles of state contract law apply. *Kirleis*, 560 F.3d at 160 ("To determine whether the parties agreed to arbitrate, we turn to 'ordinary state-law principles that govern the formation of contracts.'") (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Under New Jersey law, "[a]n enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms." *Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1180 (N.J. 2016) (citing *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 306 (N.J. 2014)).

"Arbitration clauses—and other contractual clauses—will pass muster when phrased in plain language that is understandable to the reasonable consumer." *Atalese*, 99 A.3d at 314; *see, e.g.*, *Harris v. Credit Acceptance Corp.*, No. 21-12986, 2022 WL 475618, at *7 (D.N.J. Feb. 16, 2022), *aff'd*, No. 22-1404, 2022 WL 4533854 (3d Cir. Sept. 28, 2022) (compelling arbitration in part when "[t]he Court finds that the [a]rbitration [c]lause [wa]s written in plain language that would be clear and understandable to the average consumer[]"). The arbitration clause "must be

---

[4] Although Middlesex did not attach the entire Policy to the Complaint, this Court can consider the entire Policy at the motion to dismiss stage. *See Benamax Ice, LLC v. Merch. Mut. Ins. Co.*, 529 F. Supp. 3d 350, 357 (D.N.J. 2021) ("[C]onsideration of the entire insurance policy is appropriate at this stage, even though it was not attached to the Complaint, because courts may consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'") (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

6

clear and unambiguous—that is, the parties must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum." *Atalese*, 99 A.3d at 315.

Here, there is a valid arbitration agreement in the Policy.[5] As provided under the "General Policy Conditions," the "ARBITRATION" section states:

> In the event the ASSURED and the Underwriters are unable to agree as to . . . the actual amount of indemnity to be paid, each party shall name a competent and disinterested arbitrator . . . [and the] arbitrators together shall calculate the indemnity due, and failing to agree, shall submit their differences to the umpire . . . . The decision by the arbitrators shall be binding on the Underwriters and the ASSURED, and that judgment may be entered in any court of competent jurisdiction.

(Policy 11 (emphasis in original).)

The arbitration clause is clear and unambiguous because: (1) the clause is clearly written at the top of the "General Policy Conditions" section; (2) the language warns the reader that there are additional terms and conditions of the agreement to arbitrate, including how the arbitrators will be selected, how the arbitrators and/or umpire will calculate the indemnity due, and the fact the arbitration decision will be binding; (3) the language notifies the reader which matters shall be arbitrated, including disputes regarding indemnity payments; and (4) the greater Policy

---

[5] Notably, Middlesex does not argue in its filing there is not a valid arbitration agreement. (*See* Pl.'s Opp'n Br.)

demonstrates how other provisions interact with the arbitration clause.[6] (*Id.*) As such, this Court finds there is a valid agreement to arbitrate in the Policy.

### 2. *The Dispute Falls Within the Scope of the Agreement*

Next, the Court analyzes whether the dispute falls within the scope of the agreement. "In assessing whether a dispute falls within the scope of an arbitration clause, the court's focus 'is on the factual allegations in the complaint rather than the legal causes of action asserted.'" *RCM Techs., Inc. v. Brignik Tech., Inc.*, 137 F. Supp. 2d 550, 553 (D.N.J. 2001) (quoting *Mutual Benefit Life Ins. Co. v. Zimmerman*, 783 F. Supp. 853, 868 (D.N.J. 1992)). When making that determination, however, "there is a presumption of arbitrability . . . ." *Certain Underwriters at Lloyd's, London*, 584 F.3d at 524 (quoting *AT&T Techs., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 650 (1986)) (internal quotation marks omitted). This presumption applies whenever a contract has an arbitration clause and is "particularly applicable where the clause is . . . broad." *AT&T Techs., Inc.*, 475 U.S. at 650. "Where the presumption applies, a court may not deny a motion to compel arbitration 'unless it may be said with positive assurance that the . . . arbitration clause is

---

[6] For example, the Service of Suit Clause articulates:

> This Service of Suit Clause will not be read to conflict with or override the obligations of the parties to arbitrate their disputes as provided for in any Arbitration provision within this Policy. This Clause is intended as an aid to compelling arbitration or enforcing such arbitration or arbitral award, not as an alternative to such Arbitration provision for resolving disputes arising out of this contract of insurance (or reinsurance) . . . . It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States . . . .

(Special Conditions Section, ECF No. 3-3.)

not susceptible of an interpretation that covers the asserted dispute.'" *Cup v. Ampco Pittsburgh Corp.*, 903 F.3d 58, 64 (3d Cir. 2018) (quoting *AT&T Techs., Inc.*, 475 U.S. at 650). If a court has any doubts concerning the scope of the arbitrable issues, the matter must be resolved in favor of arbitration. *First Liberty Inv. Grp. v. Nicholsberg*, 145 F.3d 647, 653 (3d Cir. 1998) (citations omitted).

Here, Middlesex argues that the dispute does not fall within the arbitration clause's scope because "[i]t provides for the parties to arbitrate only where the insured and the insurer are unable to agree on the amount of reimbursement for property damage claims and does not include claims for indemnity for the defense and settlement of Law Enforcement Liability claims . . . ." (Pl.'s Opp'n Br. 6.) This Court disagrees. In relevant part, the arbitration clause states: "In the event the ASSURED and the Underwriters are unable to agree as to . . . the actual amount of indemnity to be paid, each party shall name a competent and disinterested arbitrator . . . ." (Policy 11 (emphasis in original).) As demonstrated in the clause, indemnity disputes must go to arbitration. There is no language in the clause which articulates that specific types of claims for indemnity are exempt from the clause. (*See generally id.*) Not to mention, the Law Enforcement Activities section of the Policy does not articulate any exemption from arbitration. (*See id.* 64-67.) Given this action is about indemnity, or "reimbursement"[7] as articulated by Middlesex's factual assertions in the

---

[7] "Indemnity" and "reimbursement" are synonymous. *See Sentry Select Ins. Co. v. Clark*, No. 20-9754, 2021 WL 2472705, at *6 (D.N.J. June 17, 2021) ("The law defines 'indemnity' as '[r]eimbursement or compensation for loss, damage, or liability in tort; esp[ecially] the right of a party who is secondarily liable to recover from the party who is primarily liable for reimbursement of expenditures paid to a third party for injuries resulting from a violation of common-law duty.'") (quoting *Liberty Int'l Underwriters Canada v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 327 (D.N.J. 2013)) (alterations in original).

Complaint,[8] this dispute falls within the scope of the arbitration agreement. This is especially the case given the Third Circuit's strong favorability towards arbitration. *See Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001) ("federal policy favors arbitration and thus a court resolves doubts about the scope of an arbitration agreement in favor of arbitration"); *see, e.g., Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A.*, 98 F.4th 463, 473 (3d Cir. 2024) (reversing this Court which denied motions to compel arbitration and remanding with instructions to compel). In sum, this Court compels this matter to arbitration.

### B.   This Court Shall Stay the Action

Because this Court compels arbitration, the Court must next consider whether to dismiss or stay the action pending arbitration. In this matter, Lloyds requests a dismissal, or in the alternative, a stay (*see generally* Def.'s Moving Br.), and Middlesex requests "either staying the litigation pending arbitration or dismissing the litigation without prejudice [if this Court determines Middlesex's claims should be arbitrated]." (Pl.'s Opp'n Br. 1). Because the Court compels this matter to arbitration and both parties request a stay, the action must be stayed. 9 U.S.C. § 3 ("[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, [the court] shall on application of one of the parties stay

---

[8] Middlesex alleged that this action is about "reimbursement" in the Complaint numerous times: (1) "[Middlesex] seeks a declaration that it is entitled to *reimbursement* under a certain insurance policy of excess insurance . . . . The loss for which *reimbursement* is sought arises out of the settlement and defense of the action captioned *Jennifer Riley v. Middlesex County, New Jersey, et. al.* . . . ."; (2) "Thereafter, the County presented Lloyds with the invoices of defense counsel and requested *reimbursement* . . . . After the submission of the claim for *reimbursement* . . . ."; (3) "For the reasons set forth above, [Middlesex] is entitled to a declaration that it is owed coverage under the Policy for the damages sustained to defend and settle the Underlying Action, and for *reimbursement* of $579,629.73, the amount by which the loss exceeds $1,000,000 Self-Insured Retention[]"; and (4) "After receiving timely notice of the claim from [Middlesex] and proof of the payment of the settlement and defense costs, *reimbursement* for the claim was wrongfully denied by [Lloyds] without reasonable or debatable justification." (Compl. ¶¶ 1, 15, 16, 27, 42 (emphasis added).)

the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."); *see Spizzirri*, 601 U.S. at 475–76 ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration."); *see also Cornelius*, 133 F.4th at 245 n.4 (stating if the district court determines that the plaintiff's claims are subject to arbitration, it must stay the case because the defendants moved to dismiss, or in the alternative, to stay the case). As such, this matter will be stayed pending the results of the arbitration.

## IV.   CONCLUSION

For the reasons set forth above, the Court will compel arbitration and stay this action. The Court will issue an Order consistent with this Memorandum Opinion.

Dated: September 15, 2025

　　　　　　　　　　　　　　　　　　　　　／s／ Michael A. Shipp
　　　　　　　　　　　　　　　　　　　　MICHAEL A. SHIPP
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE